LYNNEA STEC, Plaintiff-Appellee, v. THE BOARD OF TRUSTEES OF THE OAK PARK POLICE PENSION FUND, Defendant-Appellant.

First District (4th Division)   No. 1—04—0358

Opinion filed February 17, 2005.

Richard J. Puchalski, of Law Offices of Richard Puchalski, of Chicago, for appellant.

Stanley H. Jakala, of Berwyn, for appellee.

JUSTICE THEIS delivered the opinion of the court:

Defendant, Board of Trustees of the Oak Park Police Pension Fund (the Board), appeals from an order of the circuit court of Cook County, which, on administrative review, reversed the decision of the Board denying plaintiff, Lynnea Stec, a survivor's pension. The Board contends that (1) the circuit court lacked jurisdiction to review Lynnea's complaint for administrative review; (2) Lynnea has waived any claim for survivor's benefits; and (3) Lynnea is not entitled to a survivor's pension pursuant to section 3—120 of the Illinois Pension Code (Pension Code) (Ill. Rev. Stat. 1987, ch. 108½, par. 3—120) where she married Thomas Stec subsequent to his retirement on a disability pension. For the following reasons, we reverse the judgment of the circuit court and affirm the Board's decision.

BACKGROUND

In several instances, the parties' statement of facts lacks citation to the record before the Board. Consequently, many of the facts pertinent to this appeal are adduced based upon this court's judicial notice of the previously published opinion of *Stec v. Oak Park Police Pension Board*, 204 Ill. App. 3d 556, 561 N.E.2d 1234 (1990). Therein, the court stated that Thomas was hired by the Oak Park police department as a patrol officer for the Village of Oak Park on May 2, 1977. Thereafter, on April 25, 1988, he applied for a duty-related or,

alternatively, a non-duty-related disability pension. Although the parties to this appeal have failed to inform this court, the *Stec* case further indicated that on April 26, 1988, Thomas tendered his resignation from the police department, reserving his right to pursue his disability pension. *Stec*, 204 Ill. App. 3d at 558, 561 N.E.2d at 1235. The appellate court held that where Thomas resigned after applying for a disability pension, he was not barred from receiving that pension, and the court remanded the case to the Board to determine whether Thomas' disability was duty or nonduty related. *Stec*, 204 Ill. App. 3d at 566, 561 N.E.2d at 1240. The record in the present case reflects that Thomas subsequently received a nonduty disability pension effective April 25, 1988.

On March 25, 1991, Thomas married his second wife, Lynnea. Seven years later, on May 15, 1998, Thomas died. There is no documentation in the record to verify Thomas' continued entitlement to a disability pension up until the time of his death. Nor is there any documentation indicating that his pension was ever revoked. However, after Thomas' death, his first wife and his second wife wrote to the Board and requested that the Board pay a survivor's pension to Thomas' daughter, Carolyn, from his first marriage. On July 29, 1998, the Board granted that request until Carolyn's eighteenth birthday.

Thereafter, on April 25, 2003, counsel for Lynnea sent a letter to the Board demanding that Lynnea be given a survivor's benefit as a survivor of a disabled police officer. In support, counsel cited section 3—114.2 of the Pension Code, which provides that, "If a police officer on disability pension dies while still disabled, the disability pension shall continue to be paid to the officer's survivors in the sequence provided in [s]ection 3—112." Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.2. Section 3—112 of the Pension Code provides in pertinent part as follows:

> "[T]he surviving spouse shall be entitled to the pension to which the police offer was then entitled. Upon the death or remarriage of the surviving spouse, the police officer's unmarried children who are under age 18 *** shall be entitled to equal shares of such pension." Ill. Rev. Stat. 1987, ch. 108½, par. 3—112.

Attached to the letter was a memorandum from the director of finance for the pension fund regarding a miscalculation of Lynnea's monthly annuity payments based upon her own retirement in 1994. Therein, it was noted that Lynnea married Thomas in March 1991 and that Thomas died in 1998, while in receipt of a nonduty disability pension. The note further stated:

> "In that there is [c]ase [l]aw stating that a member on disability is not retired, it would appear that the 'post-disability' marriage

would not disqualify Mrs. Stec from receiving the survivor pension provided under [s]ection 3—114.2. Said [s]ection provides that an eligible survivor would continue to receive the disability pension being paid."

No other evidence was attached to the letter in support of Lynnea's claim for survivor's benefits.

By letter of April 30, 2003, legal counsel for the Board denied Lynnea's claim on behalf of the Board. Initially, the letter indicated that Lynnea relinquished any claim to a survivor's pension in 1998 when she wrote the letter to the Board requesting that a survivor's pension be paid to Carolyn. Secondly, the Board denied her claim to survivor's benefits pursuant to section 3—120 of the Pension Code, which provides in pertinent part as follows:

"Marriage after retirement. If a police officer marries subsequent to retirement on any pension under this Article, the surviving spouse *** shall receive no pension on the death of the officer." Ill. Rev. Stat. 1987, ch. 108½, par. 3—120.

The letter from the Board further provided Lynnea with the opportunity to present additional evidence at a hearing before the Board. No hearing was requested.

Subsequently, on June 5, 2003, Lynnea filed a complaint for administrative review before the circuit court. In response, the Board filed a motion to dismiss the complaint, arguing that the action was not timely filed, that Lynnea waived her right to a survivor's pension, and that she was not entitled to a pension as a matter of law. The circuit court denied the Board's motion to dismiss and subsequently granted summary judgment in favor of Lynnea. The Board filed this timely appeal.

ANALYSIS

■ The Board initially argues that Lynnea failed to timely file her complaint for administrative review and, therefore, the trial court lacked jurisdiction to review her claim. Specifically, the Board maintains that its letter of July 29, 1998, awarding Carolyn a survivor's pension was an administrative decision from which Lynnea should have appealed within the time provided by section 3—103 of the Administrative Review Law (735 ILCS 5/3—103 (West 2002)). Section 3—103 provides in pertinent part as follows:

"Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that *a copy of the decision sought to be reviewed* was served upon the party affected by the decision[.]" (Emphasis added.) 735 ILCS 5/3—103 (West 2002).

In the present case, the decision sought to be reviewed is not the Board's grant of survivor's benefits to Carolyn but, rather, the denial of Lynnea's survivor's benefits on April 30, 2003. The Board does not argue that Lynnea's complaint was not filed within 35 days from the date the April 30 letter was served upon her. Accordingly, the circuit court had proper jurisdiction over Lynnea's complaint.

■ We next address the Board's contention that Lynnea's previous request for payment of survivor's benefits to Carolyn constitutes a waiver by Lynnea of any claim for survivor's benefits to which she may have been entitled. Section 3—117.1 of the Pension Code provides in pertinent part as follows:

> "A *** surviving spouse may execute a written waiver of the right to receive all or part of his or her pension. A waiver shall take effect upon its being filed with the board and may be revoked only within the first 30 days after it is filed with the board." Ill. Rev. Stat. 1987, ch. 108½, par. 3—117.1.

Additionally, it is well established that the alleged waiver of a right will not be upheld unless the waiver was knowing and voluntary, as waiver consists of the "intentional relinquishment of a known right." *M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center*, 198 Ill. 2d 249, 280, 764 N.E.2d 1, 18-19 (2001).

There is no express writing executed by Lynnea to the Board waiving her right to receive a survivor's pension. The letter to the Board with respect to Carolyn merely indicated that it was Lynnea's understanding that Carolyn was entitled to benefits. There is no indication by this letter that Lynnea intended to relinquish a known right to receive benefits. Accordingly, Lynnea is not barred from bringing an administrative review action based upon the doctrine of waiver.

■ We next address the Board's contention that Lynnea is not eligible to receive a survivor's pension pursuant to section 3—120 of the Pension Code. As previously stated, that section provides in pertinent part as follows:

> "Marriage after retirement. If a police officer marries subsequent to retirement on any pension under this Article, the surviving spouse *** shall receive no pension on the death of the officer." Ill. Rev. Stat. 1987, ch. 108½, par. 3—120.

The question for our review is whether Thomas married Lynnea "subsequent to retirement on any pension under this Article." Specifically, the parties dispute whether Thomas was "retired" under the statute.

When reviewing a final decision under the Administrative Review Law, we review the Board's decision and not the circuit court's determinations. *Martino v. Police Pension Board*, 331 Ill. App. 3d 975,

979, 772 N.E.2d 289, 293-94 (2002). Where the Board decides a mixed question of fact and law, the decision is reversed only if it is clearly erroneous. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998). Here, the Board made a finding of fact that Lynnea married Thomas after he was "retired" on a disability pension and applied those facts to its interpretation of section 3—120 of the Pension Code. Accordingly, the clearly erroneous standard of review is appropriate here.

We are further guided in our decision by the rules of statutory construction, which are to ascertain and give effect to the intent of the legislature. *Martino*, 331 Ill. App. 3d at 980, 772 N.E.2d at 294. In determining the legislative intent, the court should first consider the statutory language. Where the language is clear, it will be given effect without resort to other aids of construction. *Martino*, 331 Ill. App. 3d at 980, 772 N.E.2d at 294.

Applying these principles to the present case, we begin our analysis with section 3—114.2 of the Pension Code, which provides for a non-duty disability pension when an officer

> "becomes disabled as a result of any cause other than the performance of an act of duty, and [he] is found to be physically or mentally disabled so as to render necessary his *** suspension or retirement from police service in the police department." Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.2.

Thus, the plain language of section 3—114.2 contemplates that the officer's condition will necessitate either his suspension or retirement. Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.2; *Stec*, 204 Ill. App. 3d at 562, 561 N.E.2d at 1238.

The record before this court does not include any documentation to support whether Thomas was suspended or retired on a nonduty disability pension. While we admonish the Board for failing to cite to documentation in the record to support its determination that Thomas was indeed retired on a disability pension as opposed to suspended, we may take judicial notice of our previous decision in this matter. As stated previously, the facts in *Stec* indicate that Thomas resigned from the police department days after applying for disability benefits. The effective date of his nonduty disability pension was April 25, 1988. Accordingly, he retired as a disabled officer as of April 25, 1988.

Lynnea argues that while Thomas was receiving a nonduty disability pension, he had not retired from the police force. She fails to address the implication of his resignation from the police force. Rather, in support of her argument, she relies on section 3—116 of the Pension Code. That statute provides in pertinent part as follows:

> "If a police officer retired for disability *** is found upon medical

examination to have recovered from disability, the board shall certify to the chief of police that the member is no longer disabled and is able to resume the duties of his or her position. In case of emergency, a disabled police officer may be assigned to and shall perform such duty without right to compensation as the chief of police or chief officer of the municipality may direct." Ill. Rev. Stat. 1987, ch. 108½, par. 3—116.

Lynnea maintains that since the Pension Code imposes obligations on a pensioner, subjecting him to recall for emergency duty and requiring him to submit to medical exams, these obligations are inconsistent with retirement. We reject this argument. Rather, as we have previously stated in *Greenan v. Board of Trustees of the Police Pension Fund*, 213 Ill. App. 3d 179, 186-87, 573 N.E.2d 825, 830 (1991), these obligations are related to the Board's jurisdiction over his receiving disability pension benefits. If he refuses to comply, his benefits may be terminated. However, these obligations do not change the pensioner's employment status as one who retired as a disabled officer and resigned from the police force. The obligations only implicate his right to continue to receive benefits. *Greenan*, 213 Ill. App. 3d at 186-87, 573 N.E.2d at 830.

Additionally, Lynnea cites *Peifer v. Board of Trustees of the Police Pension Fund*, 35 Ill. App. 3d 383, 342 N.E.2d 131 (1976), and *Redding v. Board of Trustees of the Police Pension Fund*, 115 Ill. App. 3d 242, 450 N.E.2d 763 (1983), for the proposition that a police officer retired on a disability is not permanently retired. Those cases are distinguishable from the present case in that they address whether an officer receiving a disability pension could elect to receive a regular pension in lieu of his disability pension based upon a statute that has now been repealed.

More importantly, those cases do not address the section of the Pension Code at issue here. Section 3—120 of the Pension Code does not distinguish between permanent retirement on account of age or service and retirement on account of a disability. Indeed, the statute is broad in its scope and further encompasses retirement "on *any* pension under this Article," except in limited circumstances not relevant to the present case. (Emphasis added.) Ill. Rev. Stat. 1987, ch. 108½, par. 3—120. We are not at liberty to depart from the plain language and meaning of a statute by reading into it exceptions, limitations or conditions that the legislature did not express. *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 74, 783 N.E.2d 1024, 1031 (2002). Furthermore, the phrase "any pension under this Article" would be mere surplusage if the statute did not include both retirement on account of age or service and retirement on account of a disability pen-

sion. Accordingly, where Thomas retired on a disability pension in 1988 and married Lynnea in 1991, subsequent to his retirement, the plain language of the statute mandates that Lynnea shall receive no pension on the death of Thomas. Thus, the Board's decision to deny Lynnea survivor's benefits was not clearly erroneous.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and affirm the Board's decision to deny Lynnea survivor's benefits.

Circuit court reversed; Pension Board affirmed.

GREIMAN and QUINN, JJ., concur.