No. 2--07--0354          Filed: 5-19-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE VILLAGE OF ROSELLE, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 06--MR--956 |
| | ) | |
| THE ROSELLE POLICE PENSION BOARD, | ) | |
| | ) | |
| Defendant-Appellant | ) | Honorable |
| | ) | Bonnie M. Wheaton, |
| (Bonnie Gurke, Defendant). | ) | Judge, Presiding. |

JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, the Village of Roselle (the Village), filed the instant complaint for administrative review. Defendant the Roselle Police Pension Board (the Board) appeals the trial court's decision reversing the Board's grant of 3% cost-of-living increases on the surviving spouse pension of defendant Bonnie Gurke, widow of Charles William Gurke, Jr., a police officer who had received cost-of-living increases on his original pension pursuant to section 3--111.1(c) of the Illinois Pension Code (Pension Code) (40 ILCS 5/3--111.1(c) (2004)). For the following reasons, we affirm the decision of the trial court.

BACKGROUND

The following facts are not disputed. Bonnie is the surviving spouse of Charles, a Roselle police officer, who died on November 21, 2005. Prior to his death, Charles received from the

Roselle Police Pension Fund a line-of-duty disability pension pursuant to section 3--114.1(b) of the Pension Code (40 ILCS 5/3--114.1(b) (West 2004)). Section 3--114.1(b) provides:

"(b) If a police officer on disability pension dies while still disabled, the disability pension shall continue to be paid to his or her survivors in the sequence provided in Section 3--112." 40 ILCS 5/3--114.1(b) (West 2004).

Charles did not apply for cost-of-living increases pursuant to section 3--114.1(d). However, upon attaining age 60, Charles received annual cost-of-living increases pursuant to section 3--111.1(c) of the Pension Code (40 ILCS 5/3--111.1(c) (West 2004)). Section 3--111.1(c) provides:

"(c) The monthly pension of a police officer who retires on disability or is retired for disability shall be increased in January of the year following the year of attaining age 60, by 3% of the original grant of pension for each year he or she received pension payments. In each January thereafter, the police officer shall receive an additional increase of 3% of the original pension." 40 ILCS 5/3--111.1(c) (West 2004).

The Board awarded Bonnie a surviving spouse pension. Section 3--112(a), which provides for surviving spouse benefits, states in relevant part:

"(a) Upon the death of a police officer entitled to a pension under Section 3--111 [Pensions], the surviving spouse shall be entitled to the pension to which the police officer was then entitled." 40 ILCS 5/3--112(a) (West 2004).

An issue arose concerning whether a surviving spouse is entitled to cost-of-living increases under sections 3--111.1 and 3--112 of the Pension Code (40 ILCS 5/3--111.1, 3--112 (West 2004)). As a result, the Board continued the proceedings to allow the Village to intervene. The Board sent Bonnie notice of a hearing, but she did not appear.

The Village argued that the word "then" in section 3--112(a) is unambiguous and that under its plain and ordinary meaning it should be understood to mean that a survivor's pension is fixed at the time of the police officer's death. The Village pointed out that section 3--114.1(d) (40 ILCS 5/3--114.1(d) (West 2004)) provides that, upon the death of the police officer, the annuity payable to survivors shall include annual increases previously received, but that "no additional increases shall accrue." The Village asserted that, although Charles did not receive annual increases under section 114.1(d), this section, like section 3--112(a), depicted the legislature's intent to fix the survivor's pension at the time of the police officer's death. The Village asserted that none of the statutes under Article 3 of the Pension Code gave the Board the authority to grant survivors continuing annual cost-of-living increases. Finally, the Village observed that an advisory opinion of the Illinois Department of Insurance agreed with the Village's interpretation and should be given persuasive weight.

The Board's attorney, Richard J. Reimer, opined that the word "then" is ambiguous. He argued that it should not be so narrowly interpreted to fix a survivor's pension at the time of the police officer's death, but that it should include each and every right that the officer retained at the time of his death. In other words, Reimer asserted that the word means that the surviving spouse "stepped into the shoes" of the officer, such that the spouse continues to collect the cost-of-living increases to which the officer would have been entitled had he lived. Reimer maintained that the Board was the agency charged with the administration of the Pension Code as it applied to police officers and beneficiaries and, therefore, the Board was in the best position to determine the legislative intent of the statute. He further argued that, if a statute can be construed in more than one way, deference should be given to the construction that carries out the purpose of the drafters. Finally, Reimer argued that the Pension Code should be liberally construed in favor of beneficiaries, to allow cost-of-living increases to surviving spouses.

The Board agreed with Reimer and on June 12, 2006, rendered a final, written decision, concluding that the legislature intended that surviving spouses are entitled to cost-of-living increases pursuant to sections 3--111.1 and 3--112 of the Pension Code. Accordingly, it granted Bonnie cost-of-living increases.

On July 11, 2006, the Village filed a complaint for administrative review. The parties presented to the trial court the same basic arguments that they presented to the Board. The trial court found no statutory authorization for cost-of-living increases for surviving spouses and reversed the decision of the Board. The court also entered a default judgment against Bonnie, as a formality for jurisdictional purposes. The Board timely appeals.

We note that in Sola v. Roselle Police Pension Board, 342 Ill. App. 3d 227 (2003), the Board awarded Jeanette Sola, another surviving spouse, cost-of-living increases. We upheld the payment on procedural grounds but declined to address whether such payments were provided for under Article 3 of the Pension Code. We address that issue in the present appeal.

ANALYSIS

Before addressing the arguments of the parties, we first must recite our standard of review and the relevant rules of statutory construction, as this case presents a question of statutory interpretation. We review the decision of the administrative agency, not that of the trial court. Stec v. Board of Trustees of the Oak Park Police Pension Fund, 355 Ill. App. 3d 974, 978-79 (2005). Where, as here, the facts are undisputed and the determination involves a question of law, such as statutory interpretation, our review of the administrative agency's determination is de novo. City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 205 (1998); Alm v Lincolnshire Police Pension Board, 352 Ill. App. 3d 595, 598 (2004) (meaning of "act of duty" requires de novo review).

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. In re Marriage of Rogers, 213 Ill. 2d 129, 136 (2004). The plain language of the statute is the best indicator of the legislature's intent, and, when that language is clear, its meaning will be given effect without resort to other tools of interpretation. Metzger v. DaRosa, 209 Ill. 2d 30, 34-35 (2004). Statutes should be construed in harmony with each other if at all possible, so that no provisions are rendered inoperative. Knolls Condominium Ass'n v. Harms, 202 Ill. 2d 450, 458-59 (2002). Moreover, courts presume that statutes that relate to one subject are intended by the legislature to be consistent and harmonious with each other. Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund, 155 Ill. 2d 103, 111-12 (1993).

The Board presents the same arguments that it presented below. It asserts that the legislature intended that surviving spouses are entitled to annual cost-of-living increases pursuant to sections 3--111.1 and 3--112 of the Pension Code. The Board maintains that the word "then" in section 3--112(a) is ambiguous and should not be so narrowly interpreted to fix a survivor's pension at the time of the police officer's death. It believes that the word "then" can mean that the surviving spouse "steps into the shoes" of the police officer and continues to receive the same benefits the officer retained at the time of his or her death. However, because the Board believes that the word is capable of more than one meaning, it argues that the statutes should be construed liberally in favor of beneficiaries and that deference should be given to the construction that carries out the purpose of the drafters. The Board further asserts that, because it is the agency charged with the administration of the Pension Code as it applies to police officers and beneficiaries, it is in the best position to determine the legislative intent of the statute. We disagree with the Board's analysis for the following reasons.

We do not find that the word "then" is ambiguous. Section 3--112(a) states, in relevant part: "Upon the death of a police officer entitled to a pension under Section 3--111, the surviving spouse shall be entitled to the pension to which the police officer was <u>then</u> entitled." (Emphasis added.) 40 ILCS 5/3--112(a) (West 2004). The word "then," as an adverb, means "at that time." Black's Law Dictionary 1325 (5th ed. 1979). As stated in Black's Law Dictionary, "[i]t simply refers to a time already fixed." Black's Law Dictionary 1325 (5th ed. 1979). The logical interpretation of the word "then" in section 3--112(a) is that the surviving spouse is entitled to the pension benefits that the officer was receiving <u>at the time</u> of his or her death. This interpretation contemplates a fixed benefit amount and rules out future benefit increases. Furthermore, the remainder of section 3--112 is silent regarding cost-of-living increases for survivors who receive benefits, which supports the argument that the legislature did not intend that surviving spouses receive such future increases.

We also find the Board's definition of "then" illogical. We believe that the phrase "to which the police officer was then entitled" is a modifier that freezes the dollar amount of the pension. Common sense dictates that no aspect of the pension could be frozen other than the 3% cost-of-living increases. Furthermore, if the legislature had wanted the survivor to "step into the shoes" of the pensioner and receive the 3% cost-of-living increases, it would have said so.

The Board found that it had the authority to grant Bonnie cost-of-living increases based on sections 3--111.1 and 3--112 of the Pension Code. Section 3--111.1 grants cost-of-living increases for police officers who have retired from service either for age, service longevity, or disability. Importantly, though, section 3--111.1 is silent regarding cost-of-living increases for surviving spouses of police officers. On the other hand, section 3--112 specifically addresses pension benefits available to surviving spouses of police officers, and that section does not grant cost-of-living increases.

Section 3--114.1(b) specifically addresses cost-of-living increases for surviving spouses of line-of-duty disability pensioners and exemplifies the intent of the legislature to fix the retirement benefits to those received at the time of the officer's death. Section 3--114.1(b) states: "If a police officer on disability pension dies while still disabled, the disability pension shall continue to be paid to his or her survivors in the sequence provided in Section 3--112." 40 ILCS 3--114.1(b) (West 2004). By referring to section 3--112, it is clear that the survivor continues to receive the line-of-duty disability pension the officer received at the time of his or her death.

Although Charles did not apply for or receive annual increases under section 3--114.1(d), this section provides specific insight of the legislative intent concerning cost-of-living increases for surviving spouses under Article 3 of the Pension Code. Section 3--114.1(d) provides that, "[u]pon the death of a disabled police officer, the annuity payable under this Section to his or her survivors shall include any annual increases previously received, but no additional increases shall accrue under this subsection." 40 ILCS 5/3--114.1(d) (West 2004). Statutes relating to the same subject must be compared and construed with reference to each other so that effect may be given to all of the provisions of each if possible. Knolls Condominium, 202 Ill. 2d at 459. In this case, section 3--114.1(d) is consistent with our interpretation of the word "then" in section 3--112(a). We agree with the Village that the Board had no statutory authority to award cost-of-living increases to the pension to which Bonnie was entitled.

The Board argues that it is in the best position to construe what it believes is an ambiguous statute. " '[R]eviewing courts generally accord substantial deference to the interpretation placed on a statute by the agency charged with its administration and enforcement. [Citation.] An agency's statutory interpretation will be rejected if it is unreasonable or erroneous.' [Citation.]" Hawthorne Race Course, Inc. v. Illinois Racing Board, 366 Ill. App. 3d 435, 442 (2006). We have determined

that the statute is not ambiguous. Furthermore, the Board's interpretation is in derogation of the express language of the statute. Additionally, the Board fails to give deference to the advisory opinion of the Illinois Department of Insurance (see Village of Oak Park v. Village of Oak Park Firefighters Pension Board, 362 Ill. App. 3d 357, 368 (2005)), which, although not binding on this court, also concluded that, based upon the present wording of the statutes, "upon the death of a police officer with a surviving spouse, the pension the police officer is either receiving or entitled to receive, is fixed at the date of death with no further increases being payable."

In support of its argument, the Board cites 10 statutes found in different articles of the Pension Code that specifically address annual cost-of-living increases for surviving spouses. For example, Article 2, which involves the General Assembly Retirement System Fund, specifically provides for a 3% annual increase to a surviving spouse's annuity. 40 ILCS 5/2--121.1(d) (West 2004). Article 7, which regulates the Illinois Municipal Retirement Fund, also specifically provides for a 3% annual increase to a surviving spouse's annuity. 40 ILCS 5/7--156(b) (West 2004). The Board suggests that the language of these statutes is "instructive" as to legislative intent. The Board believes that, because all of the statutes of the Pension Code should be viewed as a whole, "it becomes clear that the legislature provided for annual increases to surviving spouses" under Article 3. However, the analogous pension provisions cited by the Board undercut its very position. Those "analogous" provisions demonstrate that, when it so chooses, the legislature knows how to articulate a provision of annual cost-of-living increases for surviving spouses. Consequently, here, that the legislature did not specifically spell out that requirement, but instead stated that the surviving spouse shall be entitled to the pension to which the police officer was entitled at the time of his death, indicates that the legislature did not intend to impose such a requirement.

The Board last contends that its interpretation of the statutes is consistent with its public policy argument that it should award cost-of-living increases to surviving spouses of those officers who had risked their lives to protect the public. While we acknowledge the dedication with which police officers serve, the issue is resolved by construing the applicable statutes. Accordingly, we need not consider the various public policy arguments proposed by either party. Considerations of public policy are superfluous when the statutory language is clear. See Vicencio v. Lincoln-Way Builders, Inc., 204 Ill. 2d 295, 311 (2003).

We therefore hold that surviving spouses are not entitled to cost-of-living pension increases under Article 3 of the Pension Code and that the Board was without statutory authority to grant such increases to Bonnie. Accordingly, we find that the trial court correctly reversed the decision of the Board.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and CALLUM, JJ., concur.